In re MARRIAGE OF ERICH WOPPEL, Petitioner-Appellant, and DESA WOPPEL, Respondent-Appellee.

First District (5th Division)   No. 86—1442

Opinion filed January 13, 1989.

Sheldon B. Nagelberg, of Chicago, for appellant.

Janna Dutton and Janet Wukas Ahern, both of Cook County Legal Assistance Foundation, Inc., of Evanston, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

On August 27, 1984, the trial court found that the petitioner, Erich Woppel, sexually molested his daughter and that it was in the best interests of the child that petitioner's visitation rights be terminated. The petitioner appeals.

The issue on appeal is whether the trial court erred in denying petitioner supervised visitation with his daughter in the presence of a therapist. The facts are as follows.

The petitioner, Erich Woppel, was granted reasonable visitation rights with his minor daughter pursuant to a judgment for dissolution of marriage entered April 14, 1982. Thereafter, the petitioner was given overnight visitation with his daughter on alternate weekends.

In May of 1984, the petitioner filed a petition seeking specific and additional visitation rights and seeking a rule to show cause against the respondent, Desa Woppel, petitioner's former wife and the mother of the child. In his petition, petitioner alleged that the respondent refused to comply with the court's prior order of visitation. The respondent responded with a counterpetition seeking termination of petitioner's visitation rights. In her counterpetition, the respondent alleged that the petitioner had sexually molested the five-year-old child and infected her with the bacteria, Chlamydia.

On August 24, 1984, the trial court conducted a hearing on the issues of whether petitioner had sexually molested the child and whether his visitation rights should be suspended. At trial, Dr. Sharon Ahart, a pediatrician specializing in maltreated and sexually abused children at Mt. Sinai Hospital in Chicago, Illinois, testified that she examined the child on three occasions. Dr. Ahart testified that the child's labia major was parted greater than five millimeters, indicating a strong possibility of sexual abuse. Dr. Ahart further testified that the culture tests indicated the positive presence of Chlamydia, sexually transmitted bacteria, in the child's rectum. It was also Dr. Ahart's opinion that the child contracted Chlamydia through sexual abuse.

Dr. Ahart testified that on August 12, 1984, the child told her

that the petitioner had hurt her in the vaginal area and that he had touched her vagina with his penis. It was Dr. Ahart's opinion that the child was not fabricating what she told Dr. Ahart. It was also Dr. Ahart's opinion that because the child had been hurt by petitioner, further visitation by him may be harmful to the child. In Dr. Ahart's opinion the child was emotionally traumatized.

Karen Kuchar, a counselor for sexually abused children, employed by the Child Sexual Abuse Training Center in Bollingbrook, Illinois, testified that she saw the child professionally 10 times. She testified that it was her opinion that the child was a sexually abused child. She testified that the child demonstrated with anatomically correct dolls that petitioner had inserted his penis into her vagina. Kuchar further testified that the child also disclosed that petitioner touched her between her legs with his hands and with his penis. Kuchar stated that the child indicated that she had been touched both in the genital area and in the breast area. Kuchar also stated that it was her opinion that the child was not fabricating the disclosure she made regarding the sexual contact by her father. Kuchar further related that during the counseling session immediately before the child was supposed to see her father, the child was more depressed and withdrawn than during previous visits and talked about how afraid she was to see the petitioner. Kuchar recommended that there be no visitation with the petitioner and the child because of the child's severe reluctance to talk about the abuse, because of the child's reaction to the prospect of visitation by the petitioner, and because the petitioner continued to deny that he abused the child. Kuchar further testified that the child did not want to visit with petitioner, her father.

Lastly, petitioner testified, as an adverse witness, that he tested positive for Chlamydia in the rectum and urethra.

At the conclusion of the hearing, on August 24, 1984, the trial court terminated petitioner's visitation rights with the child. The trial court further ordered that if the petitioner wanted his visitation privileges reinstated, he must obtain professional help. The petitioner did not appeal this order but instead on November 15, 1985, filed a petition for supervised visitation with the child and sought to modify the August 24, 1984, order terminating visitation. The trial court denied the petitioner's request for supervised visitation privileges and to modify the visitation termination order.

Petitioner argues that the trial court used an incorrect legal standard in its August 27, 1984, order terminating petitioner's visitation. Petitioner maintains that the trial court used "the best interests of the child" standard as opposed to the standard set forth in section

607 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 607), which provides:

"(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health.

\*\*\*

(c) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health."

The commissioner's note to section 407 of the Uniform Marriage and Divorce Act, which was enacted in its entirety in section 607, described the endangerment standard as "onerous" and states that "it was deliberately chosen to indicate its stringency when compared to the 'best interest' standard traditionally applied to this problem." The statute speaks affirmatively of a parent's "entitlement" to visitation unless the visits would endanger the children. Because of this phraseology, it has been held that the custodial parent bears the burden of proving by a preponderance of the evidence that visitation would endanger the children. *In re Marriage of Neat* (1981), 101 Ill. App. 3d 1046, 428 N.E.2d 1085.

■ In our opinion, the evidence considered by the trial court, in the instant case, clearly satisfied the rigorous endangerment standard. The trial court heard testimony that the child disclosed both to her physician and her therapist that the petitioner inserted his penis in her vagina; that the child had rectal Chlamydia which she contracted through sexual contact; that petitioner had Chlamydia in both his urethra and rectum; that the child disclosed to her therapist that she was afraid of petitioner.

■ Therefore having carefully considered the evidence considered by the trial court, we believe that the trial court denial of petitioner's visitation rights with the child is clearly supported by the evidence. It has been recognized, however, that a petition to regain visitation rights is appropriate "whenever [a parent] can show an improvement in [his or her] mental condition, particularly if [he or she] obtains psychiatric treatment." (*Taraboletti v. Taraboletti* (1978), 56 Ill. App. 3d 854, 858, 372 N.E.2d 155.) In the instant case the trial court ordered that if the petitioner wanted his visitation privileges reinstated, he must obtain professional help. The petitioner did not do so but instead

refused and filed a petition seeking supervised visitation.

For the foregoing reasons, we affirm the trial court's order denying petitioner visitation rights.

Affirmed.

MURRAY, P.J., and LORENZ, J., concur.